[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: MOTION TO STRIKE (#110)
On October 15, 1991, the plaintiff, The Southern New England Telephone Company ("SNET") filed a revised complaint in which it alleged, inter alia, that it owns an easement under Torringford Road at its intersection with East Main Street in Torrington, Connecticut. The plaintiff further alleges that the defendant, Ronald Clifford, d/b/a Torringford Mobil, operates a retail gasoline station at the aforementioned intersection. The plaintiff claims that the defendant, on its property, stored fuel in underground storage tanks and sold gasoline to retail customers through pumps located on dispenser islands. SNET claims that on August 29, 1989, it discovered that gasoline had collected in one of its manholes located at the aforementioned intersection, and that it subsequently discovered deterioration in its underground telephone cable facilities and associated lateral cables at this site. SNET further claims that subsequent testing revealed levels of gasoline that were hazardous to SNET's personnel, as well as to the structure of its cables.
SNET alleges that the underground storage tanks owned and maintained by the defendant fractured, ruptured, cracked or rusted in such a manner as to discharge the gasoline into the ground, or that the gasoline leaked from the pumps, and that the gasoline subsequently seeped into the land upon which the plaintiff holds an easement, thereby invading the plaintiff's right to enjoy said easement and causing damage to the plaintiff's equipment and personnel.
In Count Three of its complaint, the plaintiff repeats the allegations set forth above, and further alleges that the defendant's activities constitute an abnormally dangerous activity in that gasoline is an instrumentality capable of producing harm, the circumstances of the gasoline's use involved a Task of probable injury intrinsically dangerous to the person or property of others, and that such injury did, in fact, occur as a result. SNET claim that the defendant is, therefore, strictly liable for losses and damages which the plaintiff alleges it has incurred.
On November 5, 1991, the defendant filed a motion to strike Count Three of the plaintiff's revised complaint on the ground that strict liability is inapplicable here because the defendant is not involved in an abnormally or intrinsically dangerous activity.
The motion to strike is provided for in Practice Book 151-158. A motion to strike tests the legal sufficiency of a pleading and "admits all facts well pleaded." Ferryman v. Groton, 212 Conn. 138, 142,561 A.2d 432 (1989). Furthermore, the court is required to construe the facts in the complaint most favorably to the plaintiff when considering a motion to strike. Gordon v. Bridgeport Housing Authority, 208 Conn. 161,170, 544 A.2d 1185 (1988).
In its memorandum in support of its motion to strike, the defendant claims that strict liability is inappropriate here, because operating a CT Page 10533 gasoline filling station is not an abnormally dangerous activity. Therefore, the defendant claims, the third count of the complaint is legally insufficient and should be stricken.
The plaintiff, in its opposing memorandum, claims that the activities of the defendant constitute intrinsically hazardous and nonnatural activities and that, consequently, the third count of the complaint is legally sufficient and the motion to strike should therefore be denied.
To impose strict liability for an abnormally dangerous activity, certain factors must be present:
 [A]n instrumentality capable of producing harm; circumstances and conditions in its use which irrespective of a lawful purpose of due care, involve a risk of probable injury to such a degree that the activity fairly can be said to be intrinsically dangerous to the person or property of others; and a causal relation between the activity and the injury for which damages are claimed.
Caporale v. C. W. Blakeslee and Sons, Inc, 149 Conn. 79, 85, 175 A.2d 561
(1961). See also Michael v. Kenyon Oil Co., Inc., 4 C.S.C.R, 337. 339 (March 22, 1989, O'Connor, J.) (stating that the underground storage of gasoline, diesel fuel and kerosene can constitute an abnormally dangerous activity so as to permit the imposition of strict liability).
In Levenstein v. Yale University, 40 Conn. Sup. 123, 126,482 A.2d 724 (1984, Aaronson, J.), the Court stated that:
 Connecticut has recognize[d] the doctrine of strict liability for dangerous activities, [and] impose[s] it only in narrow circumstances. Typically, it has been found applicable when an activity, not regularly engaged in by the general public, is conducted in or near a heavily populated area, such that it necessarily subjects vast numbers of persons to potentially serious injury in the event of a mishap. Such activities include storing quantities of water or explosives in an unsuitable or dangerous place, maintaining inflammable liquids in quantity in the midst of a city, blasting in the midst of a city, pile driving with abnormal risk to surroundings, releasing poisonous gas or dust, and drilling oil wells or operating refineries in a thickly settled area.
Id. (citing Whitman Hotel Corp. v. Elliott Watrous Engineering Co.137 Conn. 562, 79 A.2d 591 (1951)) (emphasis added).
In the present matter, the plaintiff has alleged that gasoline discharged from the defendant's storage tanks or dispenser pumps invaded the land on which the plaintiff owned an easement and, subsequently, harmed personnel CT Page 10534 and property of the plaintiff. The plaintiff alleges that the defendant has knowingly engaged in an abnormally dangerous activity, namely, the use of underground gasoline storage tanks and pumps, and has permitted the escape of ultra-hazardous substances, specifically, gasoline. These allegations, are sufficient to establish a claim sounding in strict liability and, consequently, count three is legally sufficient. See, e.g. Caporale, supra and Kenyon Oil Co., supra. Therefore, the motion to strike count three is denied.
PICKETT, JUDGE