[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON DEFENDANT KEIRSTEAD'S AMENDED MOTION TO STRIKE (#136)
In this case, the plaintiff Steven Trinkaus ("Trinkaus") seeks to recover for personal injuries he sustained as a result of a skiing accident that occurred on January 27, 2001 at the Mohawk Mountain ski area ("Mohawk") in Cornwall, Connecticut when a minor child, David Montoni ("Montoni"), who was riding a snowboard, collided with Trinkaus. Montoni was participating in a weekend ski trip sponsored by his Boy Scout troop and Trinkaus has sued, among many others, Michael Keirstead ("Keirstead"), an assistant scout master. Keirstead has moved to strike the fourth count of the amended complaint against him claiming that it fails to allege any facts which would support an exception to the general rule that parents and those acting in loco parentis, cannot be held liable to third parties for the torts of a minor child.
The general rule under the common law of this state is that a parent is not liable for the torts of a minor child unless the parent either makes a dangerous instrumentality available to the child which the child is incapable of handling or the parent fails to control a child's known dangerous propensities. See generally Wright Fitzgerald, Connecticut Law of Torts, § 77 (2d Ed. 1968); LaBonte v. FederalMutual Ins. Co., 159 Conn. 252, 256, 268 A.2d 663 (1970); Geter v.Amrani, Superior Court, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 293856 (June 1, 1993, Lager, J.), Lutteman v.Martin, 20 Conn. Sup. 371, 373, 135 A.2d 600 (Ct. Common Pleas 1957). The parties agree that this rule applied to Keirstead, who was acting in lieu of Montoni's parents on the day of the accident, but differ in their view of the adequacy of the factual allegations to support either of the exceptions.
In ruling on this motion to strike, "the court is limited to the facts alleged in the complaint." Waters v. Autuori, 236 Conn. 820, 825,676 A.2d 357 (1996). "It is fundamental that in determining the CT Page 1481 sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Internal quotation marks omitted.)Doe v. Yale University, 252 Conn. 641, 667, 748 A.2d 834 (2000). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.)Id. However, "[a] motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems v. BOC Group, Inc., 224 Conn. 210,215, 618 A.2d 25 (1992).
The fourth count alleges the following facts. On January 27, 2001, Trinkaus, an experienced skier, was skiing on the beginner's trail at Mohawk behind his five-year-old son who was connected to him by a tether. (¶¶ 1, 2, 7, 8, 9.) Montoni, a minor, was a member of the Housatonic Council, Troop #55, of the Boy Scouts of America ("the troop") from Shelton. (¶ 10.) Keirstead was an assistant scout master of the troop and was acting as its agent, along with the defendants Robert Atkin ("Atkin"), the scout master, and Russell Shimer ("Shimer"), another assistant scout master. (¶ 13.) From January 26, 2001 through January 28, 2001, the troop sponsored a weekend ski trip to Mohawk. (¶ 14.) Keirstead attended the trip and had agreed to supervise each participant and be responsible for their safety. (¶¶ 15, 16.) The parents of each scout participating had to sign a "Permission for Ski" form provided by the troop, thereby entrusting their children to the care and supervision of the troop leaders. (¶ 17.) Although the ski trip began on Friday, Keirstead and the others agreed that Montoni could join the group on Saturday. (¶ 18.) Before arriving, Montoni had purchased a combination ticket from Mohawk that included use of ski lifts, equipment rental and a lesson. (¶ 19.) When Montoni arrived at Mohawk on January 27, 2001, he went directly to the ski rental shop and obtained snowboard equipment. He was not required to nor did he check in with Atkin, Shimer or Keirstead or any other adult representative of the troop. (¶ 20.) Montoni then went directly to the beginner's trail, rode the ski lift to the top and began to ride down the hill although he had never been on a snowboard before. (¶ 21.) While riding down the mountain, Montoni crashed into Trinkaus from behind. (¶ 22.)
The fourth count then alleges a series of acts and omissions, claimed to constitute negligence on Keirstead's part. (¶ 23. a — k.)[1] In the majority of these allegations, Trinkaus maintains that Keirstead failed to control or supervise Montoni. Trinkaus also alleges that Keirstead entrusted to Montoni "a dangerous instrumentality, namely a snowboard, when he knew or should have known that he was incapable of CT Page 1482 handling it and it was foreseeable he would injure someone while riding it." (¶ 23. k.) Trinkaus claims that this allegation alone suffices to state a cause of action against Keirstead because a snowboard can be considered to be inherently dangerous. He also claims that under the particular circumstances, in which Montoni was allowed to pick up the equipment and use it to ride down the mountain without supervision although he had never been on a snowboard before and did not receive any lessons, the snowboard was a dangerous instrumentality.
The court cannot conclude that a snowboard is a dangerous instrumentality as a matter of law. Only "instrumentalities which, by their nature, are calculated to cause injury, are considered dangerous per se." Levenstein v. Yale University, 40 Conn. Sup. 123, 125, 482 A.2d 724
(1984). Nor does the "mere possibility of injury, through some cause or condition not reasonably likely to occur . . . justify the classification of an instrument as dangerous in itself or in its operation." Godfrey v.Connecticut Co., 98 Conn. 63, 68, 118 A. 446 (1922). Nonetheless, courts have recognized that although not inherently dangerous, an instrumentality can become dangerous by its mode of use or when furnished to an immature, incompetent or reckless minor. See, e.g., Republic Ins.Co. v. Michel, 885 F. Sup. 426, 431 (E.D.N.Y. 1995); Honea v.Bradford, 39 N.C. App. 652, 251 S.E.2d 720 (1979); Dinger v. Burnham,360 Mo. 465, 468, 228 S.W.2d 696 (Mo. 1950). "Whether a particular object qualifies as a dangerous instrument depends on the nature of the instrument and the facts pertaining to its use, including the particular attributes of the minor using or operating the item . . ." Rios v.Smith, 95 N.Y.2d 647, 653, 722 N.Y.S.2d 220, 744 N.E.2d 1156 (2001). Thus, the age, intelligence and prior experience of the minor using an instrument are factors to be considered in determining whether a particular object is a dangerous instrument. Alessi v. Alessi,103 App.Div.2d 1023, 487 N.Y.S.2d 396 (N.Y.App.Div., 4th Dept, 1984). As the court observed in Jarboe v. Edwards, 26 Conn. Sup. 350, 353,223 A.2d 402 (1966), "[t]he question whether matches in the hands of a young child of four years were a dangerous instrumentality was a question of fact for the jury to determine."
In this case, the plaintiff alleges that Keirstead made a snowboard available to Montoni although he knew or should have known that Montoni was not capable of handling it because he had never used a snowboard before and had not taken lessons and also alleges that under these circumstances it was foreseeable that Montoni would pose a hazard to others. (¶ 23 f, g, k.) These allegations suffice to state a cause of action under the first exception, that is, making a dangerous instrumentality available to a child which the child is incapable of handling.[2]
CT Page 1483
As a result of this conclusion, it is technically unnecessary to determine whether the allegations of the fourth count adequately support the second exception, that is, failing to control a child's known or specific dangerous propensities. However, to prevail on such a claim, Trinkaus must allege and prove that Keirstead knew or should have known that Montoni had a propensity to engage in a specific dangerous activity. The factual allegations of the fourth count do not appear to support such a claim. See Santagata v. Woodbridge, Superior Court, judicial district of New Haven, Docket No. 384914 (Dec. 26, 1997, Zoarski, J.) (complaint must allege defendant failed to restrain a minor who he knew or should have known had specific dangerous propensities).
When any allegation of a count suffices to support a cause of action, the count cannot be stricken. Accordingly, Keirstead's motion to strike the fourth count against him is denied.
LINDA K. LAGER, JUDGE